## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| NIKI DUKELLIS,<br><br>                    Plaintiff,<br><br>     vs.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>                    Defendant. | Case No.: 3:17-cv-05700-LB<br><br>**COURT ENFORCEABLE SETTLEMENT AGREEMENT AND RELEASE**<br><br><br>Judge: Hon. Laurel Beeler<br>Action Filed: October 3, 2017 |

This Settlement Agreement and Release of All Claims ("AGREEMENT") is made between NIKI DUKELLIS ("DUKELLIS") and THE REGENTS OF THE UNIVERSITY OF CALIFORNIA ("REGENTS").

### RECITALS

A.      DUKELLIS filed a lawsuit against the REGENTS venued in United States District Court for the Northern District of California (San Francisco Division), Case No. 3:17-CV-05700-LB ("the ACTION") asserting claims and allegations of unlawful discrimination relating to her attendance at the University of California, Berkeley ("UC Berkeley");

B.      The REGENTS denies and disputes DUKELLIS's claims and allegations;

C.      In order to avoid the substantial expense and inconvenience of further litigation, the parties now desire to fully and finally settle all claims on the terms set forth in this AGREEMENT. This includes all claims asserted in the ACTION, all issues that were raised or could have been raised in the ACTION and any claims or potential claims arising from any transactions or occurrences to date between DUKELLIS, on the one hand, and the REGENTS on the other hand.

THEREFORE, IN CONSIDERATION OF THE MUTUAL PROMISES CONTAINED HEREIN, IT IS HEREBY AGREED AS FOLLOWS:

1.      Payment.  In exchange for the promises and warranties of DUKELLIS, as set forth below, the REGENTS shall pay the total sum of Two Hundred Thousand Dollars ($200,000) ("the settlement sum") as follows: (1) one check made payable to Niki Dukellis in the amount of $75,000; (2) another check made payable to Leigh Law Group PC in the amount of $26,268.75; and (3) a third check made payable to Derby, McGuinness & Goldsmith, LLP in the amount of $98,731.25.  The settlement sum shall be made payable after the final signature on this Agreement and the provision of a W9 from each payee identified in this paragraph and shall be paid within 40 days of such receipt..

2.    <u>Mutual General Release of All Claims</u>.  Except for actions necessary to enforce this agreement, DUKELLIS unconditionally, irrevocably and absolutely releases and discharges the REGENTS, as well as any other present or former employees, officers, agents, attorneys, affiliates, successors, assigns and all other representatives of the REGENTS (collectively, "RELEASED PARTIES"), from any and all causes of action, judgments, liens, indebtedness, damages, losses, claims (including attorneys' fees and costs), liabilities and demands of whatsoever kind and character that DUKELLIS may now or hereafter have against the RELEASED PARTIES arising from all incidents or events occurring on or before the date DUKELLIS executes this Agreement, and these claims shall collectively be referred to hereafter as "RELEASED CLAIMS."  To the extent permitted by law, this release is intended to be interpreted broadly to apply to all transactions and occurrences between DUKELLIS and any of the RELEASED PARTIES, including but not limited to any and all claims related to DUKELLIS's period of academic enrollment with the REGENTS, including all events that occurred during the course of her studies at UC Berkeley, and all other losses, liabilities, claims, charges, demands and causes of action, known or unknown, suspected or unsuspected, arising directly or indirectly out of or in any way connected with DUKELLIS's attendance at UC Berkeley, and/or these transactions or occurrences.  RELEASED CLAIMS include, without limitation, any claims under the laws of contract or tort, the common law, the state or federal Constitution, any state or federal statutes (including, without limitation, the California Civil Code, the California Government Code, the Americans with Disabilities Act, the Rehabilitation Act and Title VI of the Civil Rights Act) and any policy of the REGENTS or the University of California.  RELEASED CLAIMS include all claims for all injuries of any kind including physical injuries, illness, damage or death, and all claims for attorneys' fees, costs, and expenses. Notwithstanding the foregoing, RELEASED CLAIMS shall not include any other claims that cannot lawfully be waived or released by private agreement.

Except as necessary for actions to enforce this agreement, the REGENTS unconditionally, irrevocably and absolutely releases and discharges DUKELLIS, as well as her present or former agents, attorneys, assigns and all other representatives of DUKELLIS from any and all causes of action, judgments, liens, indebtedness, damages, losses, claims (including attorneys' fees and costs), liabilities and demands of whatsoever kind and character that the REGENTS may now or hereafter have against the RELEASED PARTIES arising from all incidents or events occurring on or before the date the REGENTS executes this Agreement to the greatest extent permitted by law.

3.    <u>Unknown or Different Facts or Law</u>.  The parties acknowledge that they may discover facts or law different from, or in addition to, the facts or law they know or believe to exist with respect to a Released Claim.  The parties agree, nonetheless, that this AGREEMENT and the releases contained in it shall be and remain effective in all respects notwithstanding such different or additional facts or law.

4.    <u>California Civil Code Section 1542 Waiver</u>.  DUKELLIS and the REGENTS expressly acknowledge and agree that the releases contained in this AGREEMENT include a waiver of all rights under Section 1542 of the California Civil Code.  This statute reads as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE
CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO
EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE
RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE
MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE
DEBTOR OR RELEASED PARTY.

DUKELLIS and the REGENTS acknowledge that they have read all of this AGREEMENT,
including the above Civil Code section, and that each fully understands both the AGREEMENT
and the Civil Code section. Each party waives any benefits and rights granted to them pursuant
to Civil Code section 1542.

5.    Dismissal of Entire ACTION with Prejudice.   DUKELLIS agrees to take all
actions necessary to dismiss the entire ACTION, with prejudice, within 5 days after this
AGREEMENT becomes effective and after the REGENTS has made payment of the settlement
sum, including, but not limited to, preparing, executing and filing a Stipulation and Proposed
Order Dismissing the Action with Prejudice with each party to bear their own fees and costs with
the United States District Court for the Northern District of California as to all parties.
DUKELLIS further agrees to prepare and file a Notice of Conditional Settlement no later than 5
days after DUKELLIS executes this Agreement.

6.    No Prior Assignments or Liens.   DUKELLIS represents and warrants that
DUKELLIS has not assigned to any other person or entity any of the RELEASED CLAIMS.
DUKELLIS further represents and warrants that DUKELLIS has not, directly or indirectly,
caused any liens or claims to be placed on any of the amounts being paid by the REGENTS other
than liens held by DUKELLIS' present attorneys and prior attorney whose liens will be satisfied
as provided in this AGREEMENT and further represents and warrants that DUKELLIS is not
aware of the existence of any such liens. DUKELLIS agrees to defend, indemnify and hold the
REGENTS harmless from any liability, losses, claims, damages, costs or expenses, including
reasonable attorneys' fees, arising out of a breach of the representations and warranties contained
in this paragraph.

7.    No Admissions.   It is understood and agreed that this AGREEMENT is not an
admission of liability, and that the REGENTS and the other RELEASED PARTIES intend
merely to avoid further litigation and expense by entering into this AGREEMENT.

8.    Covenant Not to Sue.   Except for actions necessary to enforce this agreement,
DUKELLIS agrees, to the fullest extent permitted by law, that DUKELLIS will not initiate or
file a lawsuit or internal University proceeding to assert any RELEASED CLAIMS. If any such
action is brought, this AGREEMENT will constitute an Affirmative Defense thereto, and the
REGENTS and any other RELEASED PARTIES named in such action shall be entitled to
recover reasonable costs and attorneys' fees incurred in defending against any RELEASED
CLAIMS.  Nothing in this AGREEMENT shall be construed as a basis for interfering with
DUKELLIS's protected right to file a charge with,or participate in an investigation or proceeding
conducted by any state, federal or local government entity. Notwithstanding the foregoing, if a
state, federal or local government entity commences a lawful investigation or issues a complaint
on DUKELLIS's behalf, DUKELLIS specifically waives and releases DUKELLIS's right, if

any, to recover any monetary or other benefits of any sort whatsoever in connection with that investigation or administrative proceeding.

9.    Further Studies.   DUKELLIS understands that she may not further attend University of California, Berkeley ("UC Berkeley") as a fully enrolled undergraduate unless she satisfies the conditions for readmission after dismissal. Should DUKELLIS gain readmission at any point in the future, DUKELLIS understands that she may take the steps necessary to complete course work related to her attempt to obtain her baccalaureate from UC Berkeley. The REGENTS, however, makes no representations or predictions of any kind regarding DUKELLIS's ability to satisfactorily complete said coursework to obtain her baccalaureate from UC Berkeley at any time in the future. DUKELLIS expressly agrees and acknowledges that UC Berkeley's enforcement of its own rules, policies and academic standards related to the coursework and the conferment of any baccalaureate to DUKELLIS shall not operate as a breach of this AGREEMENT.

9.1    DUKELLIS shall have direct access by telephone, text messaging, email, video chat, or mail to the DSP's Executive Director (presently Karen Nielson) for purposes of applying for accommodations as required by DSP/DSS in paragraph 16 of the attached Exhibit A policies to be implemented as part of this settlement agreement.

10.    Injunctive Relief.  This settlement shall be a full, complete, and final disposition and settlement of Plaintiff's claims against the REGENTS, including those for injunctive relief, that have arisen out of the subject Complaint. The Parties agree that the REGENTS shall within ninety (90) days implement the policy changes attached hereto as **Exhibit A**.  The injunctive relief provided herein shall be in full force and effect, and fully enforceable by this Court for a period of sixty (60) months after the date of entry of an order retaining jurisdiction to enforce this AGREEMENT by the Court.  The parties further stipulate that no element of the policy changes may be amended or changed without express written consent of Plaintiff through her counsel through the expiration of the sixty (60) month enforcement period.

11.    Attorneys' Fees and Costs.   DUKELLIS and the REGENTS and any other RELEASED PARTIES agree to bear their own attorneys' fees and expenses incurred in connection with the ACTION and/or any RELEASED CLAIMS, except as otherwise set forth herein.

12.    Tax Consequences.  The REGENTS has made no representation about and takes no position on the tax consequences of this AGREEMENT. A dispute regarding the tax status of this AGREEMENT shall not affect the validity of this AGREEMENT. DUKELLIS has had an opportunity to discuss the potential tax consequences of this AGREEMENT with DUKELLIS's own tax advisors and agrees to indemnify and hold harmless the REGENTS from any and all costs and assessments, including, but not limited to, delinquent taxes, penalties and/or assessments levied against the REGENTS for DUKELLIS's portion of any such taxes as a result of actions taken by the REGENTS pursuant to this AGREEMENT.

13.    Applicability of California Public Records Act. The parties acknowledge that the REGENTS is subject to the California Public Records Act ("CPRA") and that this Agreement may constitute public records of a type that is generally required to be disclosed upon request, to

the extent such disclosure is also consistent with the University's obligations under the law, including but not limited to the Family Educational Rights and Privacy Act.

14.    Condition Precedent. This Agreement shall not be binding on REGENTS unless and until the Board of Regents of the University of California has formally approved this settlement and such formal approval has been communicated to counsel for Plaintiff. The REGENTS will initiate the process for seeking this formal approval upon the receipt by the REGENTS' counsel of a copy of this Agreement, fully executed by Plaintiff.

15.    California Law. This AGREEMENT is made and entered into in the State of California and shall in all respects be interpreted and enforced in accordance with California law.

16.    Severability. Should it be determined by a court that any term of this AGREEMENT is unenforceable, that term shall be deemed to be deleted. However, the validity and enforceability of the remaining terms shall not be affected by the deletion of the unenforceable terms.

17.    Modifications. This AGREEMENT may be amended only by a written instrument executed by all parties hereto.

18.    Cooperation. The parties agree to do all things necessary and to execute all further documents necessary and appropriate to carry out and effectuate the terms and purposes of this AGREEMENT.

19.    Interpretation; Construction. The headings set forth in this AGREEMENT are for convenience only and shall not be used in interpreting this AGREEMENT. This AGREEMENT has been drafted by legal counsel representing the REGENTS, but DUKELLIS and DUKELLIS's counsel have fully participated in the negotiation of its terms. DUKELLIS acknowledges that DUKELLIS has had an opportunity to review and discuss each term of this AGREEMENT with legal counsel and, therefore, the normal rule of construction, which is that any ambiguities in the document are resolved against the drafting party, shall not be employed in the interpretation of this AGREEMENT.

20.    Entire Agreement. The parties to this AGREEMENT declare and represent that no promise, inducement or agreement not herein discussed has been made between the parties and that this AGREEMENT contains the entire expression of agreement between the parties on the subjects addressed herein.

21.    Binding Effect. This AGREEMENT shall bind the heirs, personal representatives, successors, and assigns of each party, and it shall inure to the benefit of each party and their respective heirs, successors, and assigns.

22.    Retention of Jurisdiction: The Court shall retain jurisdiction for purposes of enforcing the terms of the AGREEEEMENT.

23.    Counterparts. This AGREEMENT may be executed in counterparts. The execution of a signature page of this AGREEMENT shall constitute the execution of the

AGREEMENT, and the AGREEMENT shall be binding on each party upon that party's signing of such a counterpart.

24.  <u>Advice of Counsel</u>.  The parties declare and represent that they are executing this AGREEMENT with full advice from their respective legal counsel, that they intend that this AGREEMENT shall be complete and shall not be subject to any claim of mistake, that the releases herein express a full and complete release and that, regardless of the adequacy or inadequacy of the consideration, each intends the releases herein to be final and complete. Each party executes this release with the full knowledge that this release covers all possible claims to the fullest extent permitted by law.

Dated: _08 - 14_____, 2020

_____
NIKI DUKELLIS

Dated: ___9/15/2020_____, 2020

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA

By: _____
     Nicole Craig
     CABC60FCCECB4ED...

ACKNOWLEDGED:

Dated: ___09/09_____, 2020      By: _____
                                     Kevin Confetti
                                     Chief Risk Officer
                                     University of California

APPROVED AS TO FORM:

DERBY, McGUINNESS & GOLDSMITH, LLP

By: _____     Dated: _____
    Steven L. Derby
    Attorney for Plaintiff

GORDON & REES SCULLY MANSUKHANI LLP

By: _____     Dated: __August 17, 2020__
    Ryan B. Polk
    Attorneys for Defendant

# EXHIBIT A

DocuSign Envelope ID: F30E8229-2B18-4AB2-BD46-5EA6CDB0F616

**EXHIBIT A TO COURT ENFORCEABLE SETTLEMENT AGREEMENT
AND RELEASE**

ADDENDUM TO DSP/DSS POLICY REGARDING PROVISION OF
COMPUTER ASSISTED REAL TIME CAPTIONING (CART) AND RELATED SERVICES
PROVIDED TO STUDENTS AND AUDITORS WHO HAVE AN AUDITORY DISABILITY
(HEREIN A "DSS/DSP STUDENT")

1.     CART captioning services and/or word-for-word transcripts shall be provided for every class the DSS/DSP student audits or is enrolled in and attends via UCB DSP or UCBX DSS. The DSP/DSS student shall provide 48 hours advance notice (in the case of audited or remotely accessed classes) of the student's intention to attend.

2.     DSP shall only hire CART Captioners who meet the standards of 225 wpm and 98% accuracy. An exception to this policy may be made in individual cases if the captioner approximates the standard and has other desirable qualities.

3.     DSP shall request that the Professor/GSI student provide a lecture outline and glossary of scientific/technical terms to the DSS/DSP student and the captioner/transcriptionist at least 24 hours before class.

4.     CART Captioning may be provided in person or remotely. DSP/DSS cannot guarantee availability of an in person captioner. However, regardless of delivery method (remote or in person), DSP/DSS shall assure that the captioner provides a power strip so the student can plug in a laptop, tablet or other viewing device and a USB or other wireless link between the captioner's equipment and the student's viewing device. The in-person DSP/DSS Cart Captioner Supervisor shall be allowed to provide instruction to help the DSP/DSS student have their requested format on their viewing device in class.

5.     DSP/DSS students may interact with the CART Captioner before, during (but only if urgent since such interactions will interfere with the CART Captioner's ability to caption), or after class to communicate regarding technical problems or to ask questions relevant to the CART services. If the student has questions regarding policies or services including but not limited to print access, formats for the classroom, and formats for the transcripts, the student may request and receive that information from the DSP/DSS Captioning Supervisor(s). There shall not be a single rigid format for delivery of CART captioning to the student in the classroom and/or with the Cart Captioning transcript and or for the word-for-word transcript after class. Formats and print access shall be tailored to the DSP/DSS student's needs on a case-by-case basis where the DSP/DSS and the DSP/DSS Student participate in the interactive process.

6.     The DSP/DSS Student shall be allowed to interact (but again, during class only if urgent since such interactions will interfere with the CART Captioner's ability to caption) with the Cart Captioner/Transcriptionist in person or remotely online (using the "ChatBox Function" to communicate needs and concerns). DSP will also listen to and take timely action upon any

DSP/DSS Student complaints regarding a CART Captioner/Transcriptionist's performance and replace the CART Captioner/Transcriptionist when necessary in a timely manner to support the academic progress of the DSP/DSS student.

7.     The CART Captioning Supervisor shall communicate with the Professor/GSI Student regarding issues affecting the timeliness, accessibility and clarity and regarding the accuracy of the transcription including the Professor's/GSI Student's pace, pitch, clarity and volume; The DSP/DSS CART/Transcription Supervisor(s) shall facilitate the interaction between the Professor/GSI Student as needed related to the CART Captioning/Transcription services.

8.     DSP/DSS shall provide guidelines to Professors/GSI Students regarding best practices for lecturing when a DSP/DSS Student is using CART Captioning including requesting that the Professor/GSI Student not to turn his/her face away from students while lecturing and to deliver the lecture from the front of the class.

9.     The DSP/DSS Student may request and will typically be given preferential seating up front and center for all lectures and may request and  shall typically be provided with a designated seat with access to receptacles near the DSP/DSS Student, if such receptacles exist in the classroom.

10.     After transcribing the lecture, the CART Captioner(s)/Transcriptionist(s) shall strive to have the transcript "turned around" to the DSP/DSS student within 48 hours. and except in very unusual circumstances, within 72 hours. If there is a delay in turning around the transcript in excess of 72 hours, then DSP/DSS will notify the instructor of the delay so that the instructor can provide additional time and accommodations to the DSP/DSS student. If the DSP/DSS Student expresses concerns about the timeliness, accuracy or completeness of the transcript, the CART Captioning/Transcription Supervisor (s) shall review and shall consult with faculty as needed and shall make any needed changes within 5 calendar days.

11.     The Professor/GSI Student may request a copy of the transcript for their own use and DSP/DSS will consider each request on a case-by-case basis.

12.     CART Captioning, Word for Word transcription and notetaking are separate services and that an individual DSP/DSS student may qualify for depending on the DSP/DSS student's disability-related needs.

13.     DSP/DSS Students may request additional time to prepare for and complete class (homework or exams) and each request (disability related and/or regarding delayed meaningful access to accommodations and/or related to late provision of class materials) will be considered on a case-by-case basis.

14.     A DSP/DSS Student who has concerns about DSP/DSS failing to provide services in a timely and appropriate way may file a formal complaint as described in the DSP/DSS complaint resolution process.   The complaint will be reviewed by the campus Disability Compliance Officer or appropriate DSS officer. A formal complaint may lead to a variety of administrative remedies    depending    on    the    individual    DSP/DSS    complaint.    This    includes remedies/accommodations proposed by DSP/DSS Student's request. Student shall maintain DSP/DSS services and applicable student services included but not limited to Tang Center

services, Cal 1 Card services, among others, until a final determination is made in writing to the DSP/DSS Student. Furthermore, the DSP/DSS enrolled or concurrent Student shall retain typical student services and DSP/DSS services until a final appeal is adjudicated and a final enrollment determination is made.

15.     DSP shall cooperate with the Department of Rehabilitation and/or any other related vocational rehabilitation institution's staff as needed to serve the DSP/DSS Students. A Department of Rehabilitation and/or related vocational rehabilitation institution's staff/ representative is in the DSP offices meeting with DSP/DSS Students monthly.

16.     Upon receipt of a completed application for services through DSP/DSS which will include a completed application via in person or online at the following DSP/DSS weblink (https://dsp.berkeley.edu/students/new-students), and providing documentation of disability and doing an intake appointment in person or by other electronic means, the DSP/DSS Student's request for DSP/DSS services will be accepted or denied in five (5) business days or extended one time per the DSP/DSS Student's request for extension given the DSP/DSS Student's health provider's timeline business policy for processing and delivery by electronic means or US Mail expands beyond the DSP/DSS business timeline process.

17.     Accommodations may include but are not limited to alteration of the classroom policies, altered testing conditions, and services including notetaking, CART Captioning, and Word-for-Word Transcription services. DSP/DSS shall determine DSP/DSS Students need for accommodations and auxiliary aids and services accommodations on an individual basis, not based on diagnoses. DSP/DSS will also work with Students who need effective communication services (aka auxiliary aids and services) to meet their communication preferences and requests (for example, CART Captioning, Word-for-Word Transcription, or sign language, among others) whenever possible.

18.     DSP/DSS welcomes the DSP/DSS Student, Captioner, Faculty, and/or GSI Student to check in with the Cart Captioning/Transcription Supervisor (s) whenever there are concerns related to the provision of CART Captioning/Transcription services. DSP/DSS shall not limit the amount of communication or limit when issues can be communicated. DSP/DSS would like to be notified immediately if any issues or concerns arise. DSP/DSS works with ETS to resolve technical issues as quickly as possible during class periods. DSP/DSS shall develop a DSP/DSS protocol in order to address pressing issues for the DSP/DSS Student when he/she the DSP/DSS Student is in class and there is a breakdown regarding CART Captioning done in person or remotely and/or with related equipment.

19.     The UCB ADA Compliance Officer, who is outside of DSP, shall review any disagreements about services between a DSP/DSS student and DSP/DSS consistent with the updated campus grievance policy,available here:

https://dsp.berkeley.edu/about/policies-guidelines/dsp-student-complaint-resolution-process

20.     DSP/DSS students shall receive all applicable services including but not limited to (financial aid, Tang medical center, Cal 1 Card-online access to the library and ability to check out books, and cal central access online to online libraries, AC Transit bus transportation access

card, DSP/DSS accommodations, among others during the time that any complaint against DSP/DSS may be pending for the purposes of uninterrupted academic progress so long as the student is still enrolled in the university, or through taking a summer class as a member of the public and/or others, or in a UC Berkeley Extension Program.

21.     The DSP/DSS Student may appeal an unfavorable DSP/DSS decision about requested accommodations to the ADA Compliance Officer or appropriate DSS officer who will have the final decision about the reasonableness of the foregoing requested accommodations and services.

22.     When a DSP/DSS Student files a formal appeal with the ADA Compliance Officer, the DSP/DSS Student shall have the choice to meet in person, discuss on the phone, or communicate through email, other electronic means, or TTY, among others, to share supporting evidence and discuss with the ADA Compliance Officer or his/her designated investigator or appropriate DSS officer, before a final decision is made in writing with reasons to support the final decision.

23.     DSP/DSS Students are encouraged to communicate via email, phone, other electronic means, or in person to DSP/DSS regarding updates and concerns about CART/Transcription services. DSP/DSS Students are encouraged to maintain open communication with DSP/DSS specialists, CART Captioning, and/or Word-for-Word Transcription Service Supervisors (s) as needed regarding any concerns or issues that arise.

24.     DSP/DSS shall pay industry standard for CART Captioning and/or Word-for-Word Transcription services and provides accurate, timely, meaningful and effective CART/Transcription services to DSP/DSS students who qualify for one or more of these auxiliary aids and services.

25.     DOR and related Vocational Rehabilitation agencies working with DSP/DSS may request a copy of UC Berkeley's DSP/DSS's CART Captioning and /or Word-for-Word Transcription policies, practices and procedures, and for other related policies, practices, and procedures in connection with the DSP/DSS's Student's requested accommodations with the DSP/DSS Student's permission. DSP/DSS shall coordinate with DOR as needed to assure the DSP/DSS Student receives services for the DSP/DSS Student to ensure that the provision of accommodations mentioned in the foregoing is not interrupted.

26.     DSP/DSS Students can request to schedule an in-person meeting with their DSP/DSS Specialist or the CART/Transcription Supervisor (s) at any time as needed in a timely manner before, during, or after the semester and classes related to the DSP/DSS Student's classes. DSP/DSS shall help remedy and mediate any issues regarding CART captioning and/or Word-for-Word Transcription services to support the DSP/DSS Student's academic progress.

27.     A DSP/DSS Student may request to record lectures as an approved accommodation as a backup should the power fail for CART Captioning in person or Remote Cart Captioning and for purposes of hearing the Professor's/GSI Student's tone for additional comprehension and that request will be evaluated in the same way as other requests for accommodations.

28.     A DSP/DSS Student may request to DSP and shall typically receive early registration as an accommodation so that DSP Students can plan their schedules. UC Berkeley/UC Berkeley

Extension shall not prohibit the DSP Student from requesting accommodations over via email, other electronic means, or in person.

29.     If exam accommodations conflict with another course, DSP asks DSP/DSS Students to speak with their DSP/DSS Specialist to work with the Professor/GSI Student who is administering the exam so that the DSP/DSS Student does not have to miss their next class.

## ORDER

Pursuant to stipulation, and for good cause shown, the Court shall retain jurisdiction as stipulated by the parties to enforce this Court Enforceable Settlement Agreement and Release.

**IT IS SO ORDERED.**

Dated: _____, 2020

_____
Honorable Laurel Beeler
United States Magistrate Judge